UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MATTHEW L.,

          Plaintiff,

   v.

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

CASE NO. 2:19-CV-1997-DWC

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of Defendant's denial of Plaintiff's application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 2.

After considering the record, the Court concludes that the Administrative Law Judge ("ALJ") erred in evaluating opinions from examining psychologists Dr. Widlan, Dr. Mitchell,

1  and Dr. Sanchez. Had the ALJ properly considered this evidence, Plaintiff's residual functional

2  capacity ("RFC") may have included additional limitations.

3    Accordingly, this matter is reversed and remanded pursuant to sentence four of 42 U.S.C.

4  § 405(g) to the Social Security Commissioner ("Commissioner") for further proceedings

5  consistent with this Order.

6  FACTUAL AND PROCEDURAL HISTORY

7    This case has a lengthy procedural history. On August 12, 2011 and November 4, 2011,

8  Plaintiff filed applications for DIB and SSI respectively, alleging in both applications a disability

9  onset date of October 3, 2010. *See* Dkt. 8, Administrative Record ("AR") 107. His applications

10 were denied upon initial administrative review and on reconsideration. *Id.* A hearing was held

11 before ALJ Wayne N. Araki on August 9, 2012. AR 38-68, 822-52. In a decision dated August

12 30, 2012 ALJ Araki found that Plaintiff was not disabled. AR 104-18. On February 12, 2013, the

13 Social Security Appeals Council denied Plaintiff's request for review. AR 123-26.

14   On December 6, 2013, Plaintiff filed new applications for DIB and SSI, again alleging a

15 disability onset date of October 3, 2010. AR 16, 277-85, 287-88. His applications were denied

16 upon initial administrative review and on reconsideration. AR 16, 199-207, 209-13, 214-19. A

17 hearing was held before ALJ Gordon W. Griggs on September 11, 2015. AR 69-103, 853-87. In

18 a decision dated February 3, 2016, ALJ Griggs found that Plaintiff was not disabled. AR 13-32,

19 755-74. On March 7, 2017, the Social Security Appeals Council denied Plaintiff's request for

20 review. AR 1-8, 780-83.

21   Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written

22 decision on May 17, 2017. AR 786. On February 21, 2018, this Court issued an order reversing

23 the ALJ's decision and remanding this case for reconsideration of Plaintiff's symptom testimony

24

and the medical opinion evidence. AR 789-811. On July 30, 2018, the Appeals Council issued an order vacating the ALJ's decision and remanding the case for further proceedings. AR 819-21.

On July 18, 2019, ALJ Laura Valente held a new hearing. AR 732-54. In a decision dated August 7, 2019, ALJ Valente found that Plaintiff was not disabled. AR 700-25. Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision on December 9, 2019. Dkt. 4.

In Plaintiff's Opening Brief, Plaintiff maintains the ALJ erred by failing to properly assess medical opinion evidence from David Widlan, Ph.D., Melanie Mitchell, Psy. D., Rowin Cantrell, M.D., Margaret Adam M.D., Phyllis Sanchez, Ph.D., and Tasmyn Bowes, Psy.D. Dkt. 10, pp. 2-17. Plaintiff asks this Court to remand this case for an award of benefits. *Id.* at 18.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

## DISCUSSION

**I.     Whether the ALJ properly evaluated the medical opinion evidence.**

Plaintiff contends that the ALJ erred by failing to properly evaluate opinions from examining physicians Dr. Widlan, Dr. Mitchell, Dr. Cantrell, Dr. Adam, Dr. Sanchez, and Dr. Bowes. Dkt. 10, pp. 2-17.

In assessing an acceptable medical source, an ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.

1990)); *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). When a treating or examining physician's opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

### A.     Dr. Widlan

Dr. Widlan examined Plaintiff on March 26, 2014. AR 517-21. Dr. Widlan's evaluation consisted of a review of medical records, a clinical interview, and a mental status examination. Based on this evaluation, Dr. Widlan opined that Plaintiff had an adequate ability to concentrate with some deficits in memory and social reasoning, and was cognitively capable of accepting instructions from a supervisor. AR 521. Dr. Widlan further opined that Plaintiff was able to distinguish between hallucinations and reality despite exhibiting symptoms of paranoia, but would have significant adaptive deficits. *Id.* Dr. Widlan added that Plaintiff would "clearly" struggle with attendance as well as persistence, and would become easily overwhelmed by social stressors in an employment setting. *Id.*

The ALJ assigned "some weight" to Dr. Widlan's opinion, reasoning that Dr. Widlan's opinion was supported to some extent by his review of the medical record and the results of his examination. AR 719. However, the ALJ found that Dr. Widlan's opinion: (1) did not indicate the degree of limitation in Plaintiff's functioning, or contemplate workplace limitations; (2) is inconsistent with the record, which indicates that Plaintiff engaged in symptom magnification;

(3) is inconsistent with statements Plaintiff made about his ability to perform housework; and (4) Dr. Widlan was only able to review medical records through January 2014, and was unaware of subsequent evidence inconsistent with Plaintiff's allegations. AR 719-20.

With respect to the ALJ's first reason, a finding that a physician's opinion is too vague to be useful in making a disability determination can serve as a specific and legitimate reason for discounting that opinion. *See* 20 C.F.R. §§404.1527(c)(3), 416.927(c)(3) (The better an explanation a source provides for a medical opinion, the more weight the Social Security Administration will give that opinion); *see also Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (holding that statement that the plaintiff would have "decreased concentration skills" was too vague to be useful in the disability determination).

The ALJ's reasoning is not supported by the text of Dr. Widlan's opinion, which offers an opinion on Plaintiff's ability to accept instructions from a supervisor, maintain attendance and persistence, and deal with social stressors in an employment setting. AR 521. The ALJ's finding that Dr. Widlan's opinion does not contemplate workplace limitations that would accommodate Plaintiff's limitations is both inaccurate and unpersuasive, given that it is the responsibility of the ALJ, not an examining physician, to translate and incorporate clinical findings into a succinct RFC. *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015).

As for the ALJ's second reason, a finding that a claimant exaggerated his or her symptoms can serve as a specific and legitimate reason for discounting limitations assessed by a physician, but only when the physician's opinion contains an affirmative finding of malingering and the record otherwise supports a conclusion that a claimant is prone to symptom exaggeration. *See Cha Yang v. Comm'r of Soc. Sec.*, 488 F. App'x 203, 205 (9th Cir. 2012) (finding that the record did not contain clear evidence of malingering when the physician merely

noted in his record to "R/O [rule out] malingering [,]", failed to follow up on his suspicions and none of the claimant's other treating or examining doctors suggested that the claimant might be malingering).

In discounting Plaintiff's testimony, the ALJ relied partially on statements Dr. Mitchell made in an addendum attached to her January 2014 opinion. AR 515, 715. In the addendum, Dr. Mitchell stated that "certain indicators" fell outside the normal range during her testing, suggesting that Plaintiff "may not have answered in a completely forthright manner" and the nature of his responses might lead someone evaluating her results to form a "somewhat inaccurate impression" of Plaintiff based on his responses. AR 515. Dr. Mitchell added that there was no evidence to suggest that Plaintiff was unduly defensive or motivated to portray himself as being relatively free of common shortcomings or minor faults. *Id.*

Dr. Mitchell further stated that the results of her examination "raises the possibility" of a "mild exaggeration of complaints and problems" but that Plaintiff's behavior "does not necessarily indicate a level of distortion that would render the test results uninterpretable" and added that results like these are often indicative of a "cry for help" and a "markedly negative evaluation of oneself and one's life." *Id.*

Dr. Mitchell's statement is equivocal concerning whether Plaintiff actually engaged in symptom exaggeration, and the ALJ has not cited statements from any other examining physicians echoing her concerns. Further, statements elsewhere in her opinion, such as her observation that Plaintiff exhibited no evidence of feigning or facetious behavior, and the results of a Rey 15 item test, which indicated good effort and cooperation and minimized the likelihood of malingering, indicate that Plaintiff was not engaging in symptom exaggeration. AR 503-04.

In finding that Plaintiff exaggerated his symptoms, the ALJ also relied upon Plaintiff's statement to Dr. Mitchell that he listened to loud music via headphones to drown out audio hallucinations of voices directing him to harm himself or others, and contrasted this with Plaintiff's statement that he was sometimes able to "tune out" these hallucinations without headphones. AR 500, 570, 716.

First, the fact that Plaintiff's mental health symptoms fluctuate merely reflects the waxing and waning of symptoms typical in individuals with mental health impairments, and does not support the ALJ's conclusion that Plaintiff is a malingerer. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). Second, Dr. Widlan himself noted that Plaintiff was capable of distinguishing between hallucinations and reality despite exhibiting symptoms of paranoia, and did not interpret this as a sign that Plaintiff was exaggerating his symptoms. AR 521.

The ALJ also cited several alleged inconsistencies in Plaintiff's statements relating to his hygiene, his use of public transportation, and the precise onset date of his auditory hallucinations. AR 716. There are any number of possible explanations for these alleged discrepancies, and they cannot serve as "affirmative evidence" that Plaintiff is a malingerer.

With respect to the ALJ's third reason, the evidence cited by the ALJ to support her finding that Plaintiff was able to perform housework despite his statements to the contrary does not support her conclusion. *See Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) (citations omitted) ("We require the ALJ to build an accurate and logical bridge from the evidence to [her] conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings.")

The evidence in question is a statement Plaintiff made to his treatment provider in March 2013 concerning an altercation with his partner during which his partner criticized Plaintiff for

never doing the dishes or laundry and stated that he had to do everything around the house, a conclusion with which Plaintiff disagreed. AR 470, 720. Plaintiff's disagreement with his partner, in the context of an argument, is not a specific and legitimate reason for discounting Dr. Widlan's opinion.

As for the ALJ's fourth reason, an inconsistency with subsequent evidence may serve as a specific, legitimate reason for discounting limitations assessed by a physician. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight [the Social Security Administration] will give to that medical opinion."). However, "where the purported existence of an inconsistency is squarely contradicted by the record, it may not serve as the basis for the rejection of an examining physician's conclusion." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).

Here, the ALJ reasoned that Dr. Widlan was unaware of later records showing generally benign mental status findings, Plaintiff's reports of being able to tolerate his hallucinations and distinguish them from reality, and Plaintiff's self-reported activities of daily living, including household cleaning, socializing with neighbors and making music with friends. AR 720.

First, to the extent subsequent evidence in this case, specifically opinions from other examining sources, contradicts Dr. Widlan's opinion, it appears that Plaintiff's condition actually worsened after 2014, with several examining psychologists opining that Plaintiff had a range of marked and severe work-related mental limitations. AR 986, 995, 1076. Second, as discussed above, Dr. Widlan was aware that Plaintiff is able to distinguish between hallucinations and reality despite exhibiting symptoms of paranoia, and factored this in when assessing his opinion. AR 521. Finally, Plaintiff's ability to perform basic activities of daily living cannot serve as a specific and legitimate reason for discounting Dr. Widlan's opinion. *See Diedrich v. Berryhill*,

1  874 F.3d 634, 643 (9th Cir. 2017) ("House chores, cooking simple meals, self-grooming, paying

2  bills, writing checks, and caring for a cat in one's own home, as well as occasional shopping

3  outside the home, are not similar to typical work responsibilities.").

4        Accordingly, the ALJ has not provided specific and legitimate reasons for discounting

5  Dr. Widlan's opinion.

6        **B.    Dr. Mitchell**

7        Dr. Mitchell examined Plaintiff on January 27, 2014 for the Washington State

8  Department of Social and Health Services ("DSHS"). AR 500-16, 989-92. Dr. Mitchell's

9  evaluation consisted of a review of medical records, a clinical interview, a mental status

10 examination, and psychological testing. Dr. Mitchell also attached an addendum to her report to

11 explain some of her findings. AR 515-16. Based on this evaluation, Dr. Mitchell opined that

12 Plaintiff would have a range of marked and severe work-related mental limitations. AR 502-03,

13 991-92.

14       The ALJ assigned "little weight" to Dr. Mitchell's opinion, reasoning that: (1) while Dr.

15 Mitchell observed that Plaintiff demonstrated deficits in concentration and recent memory in

16 response to a judgment question, she did not describe the tasks she administered or the results;

17 (2) Dr. Mitchell's examination findings were largely based on Plaintiff's subjective responses;

18 (3) Dr. Mitchell was unaware of subsequent medical records inconsistent with her examination

19 findings and Plaintiff's statements that he was sometimes able to tolerate his auditory

20 hallucinations and distinguish them from reality; (4) Dr. Mitchell's opinion concerning

21 Plaintiff's limitations in inconsistent with the addendum attached to her report; and (5) Dr.

22 Mitchell indicated that Plaintiff did not require a protective payee and stated that vocational

23

24

training could minimize barriers to employment, a conclusion inconsistent with disabling limitations. AR 720-22.

With respect to the ALJ's first reason, Dr. Mitchell provided a detailed description of the clinical interview, mental status examination, and psychological testing she administered. AR 500-16.

As for the ALJ's second reason, Dr. Mitchell utilized objective measures in forming her opinion, and did not rely largely on Plaintiff's self-reports. *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (a psychiatrist's clinical interview and MSE are "objective measures" which "cannot be discounted as a self-report.").

With respect to the ALJ's third and fourth reasons, for the reasons discussed above in connection with Dr. Widlan's opinion, the ALJ's citation to subsequent medical evidence, Plaintiff's statements that his mental health symptoms fluctuated, and the addendum attached to Dr. Mitchell's report cannot serve as specific and legitimate reasons for discounting Dr. Mitchell's opinion. *See supra* Section I.A.

As for the ALJ's fifth reason, there is no inherent inconsistency between Dr. Mitchell's findings that Plaintiff would not require a protective payee and would potentially benefit from vocational services and her opinion that Plaintiff would have a range of marked and severe mental limitations.

The ALJ cited an additional reason for discounting the opinion of Dr. Mitchell, which she also applied to the opinions of Dr. Cantrell, Dr. Sanchez, and Dr. Bowes. AR 720-22. The ALJ reasoned that the record reflects an extensive history of attendance at mental health and medical appointments with few no-shows or cancellations, and does not indicate that Plaintiff failed to appear at appointments because of mental symptoms. AR 722.

Permitting an ALJ to infer that a claimant's regular attendance at mental health appointments meant that his or her impairments were not as serious as alleged would contradict Social Security regulations, which permit an ALJ to find the alleged intensity of an individual's symptoms inconsistent with the record when an individual *fails* to attend appointments or follow prescribed treatment that might improve symptoms. Social Security Ruling ("SSR") 16-3p; *see also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[A]n unexplained, or inadequately explained, failure to . . . follow a prescribed course of treatment . . . can cast doubt on the sincerity of the claimant's pain testimony.").

As such, the ALJ has not provided specific and legitimate for discounting Dr. Mitchell's opinion.

**C.  Dr. Sanchez**

Dr. Sanchez examined Plaintiff for DSHS on February 22, 2016. AR 993-96, 1068-74. Dr. Sanchez's evaluation consisted of a clinical interview, a mental status examination, and psychological testing. Based on this evaluation, Dr. Sanchez opined that Plaintiff would have a range of moderate and marked mental limitations, and that his overall level of limitation was marked. AR 995, 1070.

The ALJ assigned "little weight" to Dr. Sanchez's opinion. AR 720. In addition to the reasons the ALJ cited in connection with Dr. Mitchell's opinion, the ALJ further reasoned that: (1) Dr. Sanchez's examination indicated abnormal perception, thought process, and thought content due to Plaintiff's reported auditory hallucinations and fear, but hallucinations are not an indicator of thought process; (2) Dr. Sanchez indicated that the claimant spoke logically, and she did not observe Plaintiff responding to internal stimuli, and thus relied upon Plaintiff's subjective report of hallucinations in making these findings; and (3) Dr. Sanchez

1  erred by relying upon a mistake Plaintiff made during psychological testing to conclude that

2  Plaintiff had abnormal memory and concentration. AR 721.

3  With respect to all three reasons, the ALJ has impermissibly "played doctor" by

4  substituting her interpretation of these testing results for the interpretation of the examining

5  psychologist, Dr. Sanchez. *See Moghadam v. Colvin*, No. C15-2009-TSZ-JPD, 2016 WL

6  7664487, at *6 (W.D. Wash. Dec. 21, 2016); *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir.

7  1990) (cited with approval in *Hoffman v. Screen Actors Guild-Producers Pension Plan*, 571 F.

8  App'x 588, 591 (9th Cir. 2014) ("[ALJs] must be careful not to succumb to the temptation to

9  play doctor.... it is not the birthright of the lawyers who apply them. Common sense can mislead;

10  lay intuitions about medical phenomena are often wrong.") (internal citations omitted).

11  Accordingly, the ALJ has not provided specific and legitimate reasons for discounting

12  Dr. Sanchez's opinion.

13  **D.     Dr. Bowes**

14  Dr. Bowes examined Plaintiff for DSHS on January 25, 2018. AR 997-1001, 1028-39.

15  Dr. Bowes evaluation consisted of a clinical interview, a mental status examination, and

16  psychological testing. Based on this evaluation, Dr. Bowes found that Plaintiff would have a

17  range of moderate, marked, and severe mental limitations, and that the overall severity of his

18  impairments was marked. AR 1000, 1031.

19  The ALJ assigned "little weight" to Dr. Bowes' opinion, finding that her opinion was

20  inconsistent with the relatively benign results of Dr. Bowes' mental status examination. AR 720-

21  22. An internal inconsistency can serve as a specific and legitimate reason for discounting a

22  physician's opinion. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir.

23

24

1999); *see also Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (upholding ALJ's rejection of an internally inconsistent medical opinion).

Here, the ALJ found that the limitations assessed by Dr. Bowes were inconsistent with the results of her mental status examination, which indicated that Plaintiff exhibited adequate grooming and eye contact, normal speech, was cooperative but withdrawn, displayed normal thought content and process, was fully oriented, and exhibited memory, concentration, abstract thought, insight, and judgment within normal limits. AR 722, 1001, 1032-33. As such, the ALJ has provided a specific and legitimate reason for discounting Dr. Bowes' opinion.

**E.     Dr. Cantrell**

On July 1, 2013, Dr. Cantrell opined that Plaintiff continued to exhibit evidence of a severe mental disability that prevented him from holding down regular employment, and indicated that she would complete federal student loan paperwork indicating that Plaintiff was permanently disabled. AR 403.

The ALJ assigned "little weight" to Dr. Cantrell's opinion, reasoning that: (1) Dr. Cantrell's opinion does not indicate any specific areas of "severe" mental limitation or explain how her examination findings support severe limitations; (2) Dr. Cantrell was not Plaintiff's regular treatment provider; (3) Dr. Cantrell's opinion is inconsistent with the record. AR 720-21.

With respect to the ALJ's first reason, a finding that a physician's opinion is not well explained and does not offer an opinion concerning a claimant's functional limitations can serve as a specific and legitimate reason for discounting that opinion. *See* 20 C.F.R. §§404.1527(c)(3), 416.927(c)(3). Here, Dr. Cantrell's opinion was based on a brief encounter with Plaintiff, was rendered for purposes of discharging federal student loans rather than assessing disability, and

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 13

1 does not offer an opinion concerning Plaintiff's functional limitations. AR 402. Accordingly, the

2 ALJ has provided a specific and legitimate reason for discounting Dr. Cantrell's opinion.

3 Although the ALJ provided other specific, legitimate reasons to discount Dr. Cantrell's

4 opinion, the Court need not assess whether these reasons were proper, as any error would be

5 harmless. *See Presley-Carrillo v. Berryhill*, 692 Fed. Appx. 941, 944-45 (9th Cir. 2017) (citing

6 *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)) (although an

7 ALJ erred on one reason he gave to discount a medical opinion, "this error was harmless because

8 the ALJ gave a reason supported by the record" to discount the opinion).

9     **F.    Dr. Adam**

10 Dr. Adam, Plaintiff's treating physician, offered an opinion concerning Plaintiff's

11 functional limitations on December 13, 2013, assessing Plaintiff as being able to perform no

12 more than sedentary work due to pain and fatigue stemming from his fibromyalgia. AR 491-93.

13 The ALJ assigned "little weight" to Dr. Adam's opinion, reasoning that: (1) her opinion

14 is inconsistent with contemporaneous treatment notes; and (2) Dr. Adam did not provide any

15 specific findings, such as motor strength findings, specific locations of positive tender points, or

16 a DSHS range-of-motion form, to support her opinion. AR 718-19.

17 With respect to the ALJ's first reason, a finding that a physician's opinion is inconsistent

18 with the medical record may serve as a specific and legitimate reason for discounting it. *See* 20

19 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4); *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014)

20 (An ALJ may give less weight to medical opinions that conflict with treatment notes).

21 Here, the ALJ reasoned correctly that contemporaneous physical and mental

22 examinations were essentially normal, and were inconsistent with the pain and fatigue limitations

23

24

assessed by Dr. Adam. AR 478-80, 486. Accordingly, the ALJ has provided a specific and legitimate reason for discounting Dr. Adam's opinion.

## II. Remedy.

Plaintiff asks this Court to remand this case for an award of benefits. Dkt. 10, p. 18. The Court may remand a case "either for additional evidence and findings or to award benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1992). Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth Circuit created a "test for determining when evidence should be credited and an immediate award of benefits directed[.]" *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d 1273 at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002). The Court is mindful that simply providing another opportunity to assess improperly evaluated evidence, allowing the ALJ to have a "mulligan", does not qualify as a remand for a "useful purpose" under the first part of the credit as true analysis. *Garrison*, 759 F.3d at 1021-22, citing *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication.").

Here, the ALJ erred in evaluating the opinions of Dr. Widlan, Dr. Mitchell, and Dr. Sanchez. However, the ALJ provided specific and legitimate reasons for discounting the

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 15

1  opinions of Dr. Bowes, Dr. Cantrell, and Dr. Adam. As such, there remains considerable

2  uncertainty as to whether Plaintiff would be found disabled on remand, even if the improperly

3  discounted evidence were credited as true. The Court may remand on an open record for further

4  proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in

5  fact, disabled within the meaning of the Social Security Act." *Burrell v. Colvin*, 775 F.3d 1133,

6  1141 (9th Cir.2014) (quoting *Garrison*, 759 F.3d at 1021).

7      The record creates significant doubt concerning whether Plaintiff would be disabled even

8  if the limitations contained in the opinions of Dr. Widlan, Dr. Mitchell, and Dr. Sanchez were

9  credited as true. Accordingly, remand for further administrative proceedings is the appropriate

10  remedy.

## CONCLUSION

12      Based on the foregoing reasons, the Court hereby finds the ALJ improperly concluded

13  Plaintiff was not disabled. Accordingly, Defendant's decision to deny benefits is reversed and

14  this matter is remanded for further administrative proceedings in accordance with the findings

15  contained herein. The Clerk is directed to enter judgment for Plaintiff and close the case.

16      Dated this 27th day of July, 2020.

David W. Christel
United States Magistrate Judge